## AFFIDAVIT OF ALAN COOPER

I, Alan Cooper, under the penalty of perjury state that the following is true:

1.  My name is Alan Cooper and I live at 2170 Highway 47 North, Isle, MN 56342.

2.  I am 38 years old and was born in Colleen, TX.

3.  I work seasonally as a construction worker.

4.  I was was hired in 2006 as a caretaker for a property owned by John L. Steele at 21255 220th Street, McGrath, MN 56350.

5.  The attached agreement is a true copy of the contract between myself and John Steele for taking care of his property.

6.  While taking care of his property I would regularly submit receipts to Steele for reimbursements of costs in repairing or maintaining the property. These receipts might include my signature when I paid by a credit card or debit card.

7.  It is my belief that Steele has used my name as the name of a CEO or manager for one or more companies.

8.  Steele did occasionally visit his property and we would talk.

9.  Steele had told me on at least one occasion that if anyone asked about companies that I should call him.

10. Steele has hold me that he had this plan involving copyright lawsuits.

11. I am not an owner or officer of any corporation or limited liability company.

12. I am not the owner or CEO of AF Holdings, LLC.

13. I am not the owner or a manager of Ingenuity13, LLC.

14. I did not give Steele permission to use my name or sign documents on my behalf.

15. I did not know that my name was being used in connection with these companies.

_____          _12-3-12_____
Alan Cooper                        Date

Subscribed and sworn before me this 3ᴿᴰ day of December, 2012

_____
Notary Public





JAYNE MARY BLOOM
Notary Public
Minnesota
My Comm. Expires
Jan 31, 2015

**THIS RENTAL AGREEMENT** (hereinafter referred to as the "Agreement") made and entered into this 17th day of November, 2006, by and between John Steele (hereinafter referred to as "Landlord") and _Alan Cooper_ . THIS IS A MONTH TO MONTH RENTAL AGREEMENT IN WHICH EITHER PARTY MAY CANCEL WITH 30 DAYS NOTICE.

1.  **TERM**. Landlord leases to Tenant and Tenant leases from Landlord the above described Premises together with any and all appurtenances thereto, on a month to month basis.

2.  **RENT**. In exchange for paying monthly rent, the Renter agrees to work on the Landlord's property on projects designated by Landlord. Renter agrees to complete all work to the best of his ability. Landlord will determine the projects, but in no event will the time requirement be less than 15 hours a month. Satisfaction of the Renters work to satisfy the Rent requirement of this lease will be at the sole discretion of the Landlord.

3.  **Blank**

4.  **USE OF PREMISES**. The Premises shall be used and occupied by Tenant and Tenant's immediate family, consisting of one daughter, exclusively, as a private single family dwelling, and no part of the Premises shall be used at any time during the term of this Agreement by Tenant for the purpose of carrying on any business, profession, or trade of any kind, or for any purpose other than as a private single family dwelling. Tenant shall not allow any other person, other than Tenant's immediate family or transient relatives and friends who are guests of Tenant, to use or occupy the Premises without first obtaining Landlord's written consent to such use. Tenant shall comply with any and all laws, ordinances, rules and orders of any and all governmental or quasi-governmental authorities affecting the cleanliness, use, occupancy and preservation of the Premises.

5.  **CONDITION OF PREMISES**. Tenant stipulates, represents and warrants that Tenant has examined the Premises, and that they are at the time of this Lease in good order, repair, and in a safe, clean and tenantable condition.

6.  **ASSIGNMENT AND SUB-LETTING**. Tenant shall not assign this Agreement, or sub-let or grant any license to use the Premises or any part thereof without the prior written consent of Landlord. A consent by Landlord to one such assignment, sub-letting or license shall not be deemed to be a consent to any subsequent assignment, sub-letting or license. An assignment, sub-letting or license without the prior written consent of Landlord or an assignment or sub-letting by operation of law shall be absolutely null and void and shall, at Landlord's option, terminate this Agreement.

7.  **ALTERATIONS AND IMPROVEMENTS**. Tenant shall make no alterations to the buildings or improvements on the Premises or construct any building or make any other improvements on the Premises without the prior consent of Landlord. Any and all alterations, changes, and/or improvements built, constructed or placed on the Premises by Tenant shall, unless otherwise provided by written agreement between Landlord and Tenant, be and become the property of Landlord and remain on the Premises at the expiration or earlier termination of this Agreement.

8.  **blank**

9.  **HAZARDOUS MATERIALS**. Tenant shall not keep on the Premises any item of a dangerous, flammable or explosive character that might unreasonably increase the danger of fire or explosion on the Premises or that might be considered hazardous or extra hazardous by any responsible insurance company.

10. **UTILITIES**. Tenant shall be responsible for arranging for and paying for all utility services required on the Premises for his own use.

11. **MAINTENANCE AND REPAIR; RULES**. Tenant will, at its sole expense, keep and maintain the Premises and appurtenances in good and sanitary condition and repair during the term of this Agreement and any renewal thereof. Without limiting the generality of the foregoing, Tenant shall:

    (a)   Not obstruct the driveways, sidewalks, courts, entry ways, stairs and/or halls, which shall be used for the purposes of ingress and egress only;

    (b)   Keep all windows, glass, window coverings, doors, locks and hardware in good, clean order and repair;

    (c)   Not obstruct or cover the windows or doors;

    (d)   Not leave windows or doors in an open position during any inclement weather;

    (e)   Not hang any laundry, clothing, sheets, etc. from any window, rail, porch or balcony nor air or dry any of same within any yard area or space;

    (f)   Not cause or permit any locks or hooks to be placed upon any door or window without the prior written consent of Landlord;

    (g)   Keep all air conditioning filters clean and free from dirt;

    (h)   Keep all lavatories, sinks, toilets, and all other water and plumbing apparatus in good order and repair and shall use same only for the purposes for which they were constructed. Tenant shall not allow any sweepings, rubbish, sand, rags, ashes or other substances to be thrown or deposited therein. Any damage to any such apparatus and the cost of clearing stopped plumbing resulting from misuse shall be borne by Tenant;

    (i)   And Tenant's family and guests shall at all times maintain order in the Premises and at all places on the Premises, and shall not make or permit any loud or improper noises, or otherwise disturb other residents;

    (j)   Keep all radios, television sets, stereos, phonographs, etc., turned down to a level of sound that does not annoy or interfere with other residents;

    (k)   Deposit all trash, garbage, rubbish or refuse in the locations provided therefore and shall not allow any trash, garbage, rubbish or refuse to be deposited or permitted to stand on the exterior of any building or within the common elements;

(l) Abide by and be bound by any and all rules and regulations affecting the Premises or the common area appurtenant thereto which may be adopted or promulgated by the Condominium or Homeowners' Association having control over them.

12. **DAMAGE TO PREMISES**. In the event the Premises are destroyed or rendered wholly uninhabitable by fire, storm, earthquake, or other casualty not caused by the negligence of Tenant, this Agreement shall terminate from such time except for the purpose of enforcing rights that may have then accrued hereunder. The rental provided for herein shall then be accounted for by and between Landlord and Tenant up to the time of such injury or destruction of the Premises, Tenant paying rentals up to such date and Landlord refunding rentals collected beyond such date. Should a portion of the Premises thereby be rendered uninhabitable, the Landlord shall have the option of either repairing such injured or damaged portion or terminating this Lease. In the event that Landlord exercises its right to repair such uninhabitable portion, the rental shall abate in the proportion that the injured parts bears to the whole Premises, and such part so injured shall be restored by Landlord as speedily as practicable, after which the full rent shall recommence and the Agreement continue according to its terms.

13. **INSPECTION OF PREMISES**. Landlord and Landlord's agents shall have the right at all reasonable times during the term of this Agreement and any renewal thereof to enter the Premises for the purpose of inspecting the Premises and all buildings and improvements thereon. And for the purposes of making any repairs, additions or alterations as may be deemed appropriate by Landlord for the preservation of the Premises or the building. Landlord and its agents shall further have the right to exhibit the Premises and to display the usual "for sale", "for rent" or "vacancy" signs on the Premises at any time within forty-five (45) days before the expiration of this Lease. The right of entry shall likewise exist for the purpose of removing placards, signs, fixtures, alterations or additions, that do not conform to this Agreement or to any restrictions, rules or regulations affecting the Premises.

14. **SUBORDINATION OF LEASE**. This Agreement and Tenant's interest hereunder are and shall be subordinate, junior and inferior to any and all mortgages, liens or encumbrances now or hereafter placed on the Premises by Landlord, all advances made under any such mortgages, liens or encumbrances (including, but not limited to, future advances), the interest payable on such mortgages, liens or encumbrances and any and all renewals, extensions or modifications of such mortgages, liens or encumbrances.

16. **SURRENDER OF PREMISES**. Upon the expiration of the term hereof, Tenant shall surrender the Premises in as good a state and condition as they were at the commencement of this Agreement, reasonable use and wear and tear thereof and damages by the elements excepted.

17. **ANIMALS**. Tenant shall obtain permission from Landlord for all be entitled to keep any animals on the premises.

18. **QUIET ENJOYMENT**. Tenant, upon payment of all of the sums referred to herein as being payable by Tenant and Tenant's performance of all Tenant's agreements contained herein and Tenant's observance of all rules and regulations, shall and may peacefully and quietly have, hold and enjoy said Premises for the term hereof.

19. **INDEMNIFICATION**. Landlord shall not be liable for any damage or injury of or to the Tenant, Tenant's family, guests, invitees, agents or employees or to any person entering the Premises or the building of which the Premises are a part or to goods or equipment,

or in the structure or equipment of the structure of which the Premises are a part, and Tenant hereby agrees to indemnify, defend and hold Landlord harmless from any and all claims or assertions of every kind and nature.

20. **DEFAULT**. If Tenant fails to comply with any of the material provisions of this Agreement, other than the covenant to pay rent, or of any present rules and regulations or any that may be hereafter prescribed by Landlord, or materially fails to comply with any duties imposed on Tenant by statute, within seven (7) days after delivery of written notice by Landlord specifying the non-compliance and indicating the intention of Landlord to terminate the Lease by reason thereof, Landlord may terminate this Agreement. If Tenant fails to pay rent when due and the default continues for seven (7) days thereafter, Landlord may, at Landlord's option, declare the entire balance of rent payable hereunder to be immediately due and payable and may exercise any and all rights and remedies available to Landlord at law or in equity or may immediately terminate this Agreement.

21. **LATE CHARGE**. In the event that any payment required to be paid by Tenant hereunder is not made within three (3) days of when due, Tenant shall pay to Landlord, in addition to such payment or other charges due hereunder, a "late fee" in the amount of twenty five dollars.

22. **ABANDONMENT**. If at any time during the term of this Agreement Tenant abandons the Premises or any part thereof, Landlord may, at Landlord's option, obtain possession of the Premises in the manner provided by law, and without becoming liable to Tenant for damages or for any payment of any kind whatever. Landlord may, at Landlord's discretion, as agent for Tenant, relet the Premises, or any part thereof, for the whole or any part thereof, for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such reletting, and, at Landlord's option, hold Tenant liable for any difference between the rent that would have been payable under this Agreement during the balance of the unexpired term, if this Agreement had continued in force, and the net rent for such period realized by Landlord by means of such reletting. If Landlord's right of reentry is exercised following abandonment of the Premises by Tenant, then Landlord shall consider any personal property belonging to Tenant and left on the Premises to also have been abandoned, in which case Landlord may dispose of all such personal property in any manner Landlord shall deem proper and Landlord is hereby relieved of all liability for doing so.

23. **ATTORNEYS' FEES**. Should it become necessary for Landlord to employ an attorney to enforce any of the conditions or covenants hereof, including the collection of rentals or gaining possession of the Premises, Tenant agrees to pay all expenses so incurred, including a reasonable attorneys' fee.

24. **RECORDING OF AGREEMENT**. Tenant shall not record this Agreement on the Public Records of any public office. In the event that Tenant shall record this Agreement, this Agreement shall, at Landlord's option, terminate immediately and Landlord shall be entitled to all rights and remedies that it has at law or in equity.

25. **GOVERNING LAW**. This Agreement shall be governed, construed and interpreted by, through and under the Laws of the State of Minnesota.

26. **SEVERABILITY**. If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

27. **BINDING EFFECT**.  The covenants, obligations and conditions herein contained shall be binding on and inure to the benefit of the heirs, legal representatives, and assigns of the parties hereto.

28. **DESCRIPTIVE HEADINGS**.  The descriptive headings used herein are for convenience of reference only and they are not intended to have any effect whatsoever in determining the rights or obligations of the Landlord or Tenant.

29. **CONSTRUCTION**.  The pronouns used herein shall include, where appropriate, either gender or both, singular and plural.

30. **NON-WAIVER**.  No indulgence, waiver, election or non-election by Landlord under this Agreement shall affect Tenant's duties and liabilities hereunder.

31. **MODIFICATION**.  The parties hereby agree that this document contains the entire agreement between the parties and this Agreement shall not be modified, changed, altered or amended in any way except through a written amendment signed by all of the parties hereto.

32. **NOTICE**.  Any notice required or permitted under this Lease or under state law shall be deemed sufficiently given or served if sent by United States certified mail, return receipt requested, addressed as follows:

If to Landlord to: John Steele 21067 220th St McGrath, MN 56350

If to Tenant to:

Landlord and Tenant shall each have the right from time to time to change the place notice is to be given under this paragraph by written notice thereof to the other party.

SIGNED THIS 17TH OF NOVEMBER, 2006

Landlord: _____

John Steele, 21067 220th St. McGrath MN 56350.

Tenant: _____

ALAN Agrees to pay $500 on Feb 1 AND
$500 Mar. 1 For security deposit

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


SUNLUST PICTURES, LLC., CASE NO: 8:12-CV-1685-T-35MAP

      Plaintiff,

VS.                        Tampa, Florida
                             10:00 a.m.
TUAN NGUYEN,           November 27, 2011

      Defendant.
_____/


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

Counsel for Plaintiff:    JONATHAN TORRES, ESQUIRE
(Telephonically)        1417 N. Semoran Boulevard
                         Suite 205
                         Orlando, FL  32807
                         (407)953-5818
                         jonathantorresllc@gmail.com


Counsel for Defendant:    GRAHAM W. SYFERT, ESQUIRE
                         1529 Margaret Street
                         Unit 2
                         Jacksonville, FL  32204
                         (904)383-7448
                         graham@syfert.com


Court Reporter:         CLAUDIA SPANGLER-FRY, RPR, CM
                         Official Court Reporter
                         801 North Florida Avenue
                         7th Floor
                         Tampa, FL  33602
                         (813)301-5575
                         cookiefry@aol.com


CLAUDIA SPANGLER-FRY, OFFICIAL U. S. COURT REPORTER

Page 2

```
 1                    P R O C E E D I N G S

 2                     November 27, 2012

 3                      *  *  *  *  *  *

 4          THE COURT:  Mr. Torres, what sort of noise are you

 5   making on the line?

 6          MR. TORRES:  I apologize, I'm in the Courthouse.

 7          THE COURT:  All right.

 8          MR. TORRES:  In Orange County.

 9          THE COURT:  Please call the case.

10          THE CLERK:  In the matter of Sunlust Pictures, LLC --

11          MR. TORRES:  Is that better?

12          THE COURT:  That's better, yes.

13          THE CLERK:  -- versus Tuan Nguyen, Case Number

14   8:12-CV-1685.

15          Counsel and parties, please state your appearances,

16   starting with parties for the Plaintiff.

17          MR. LUTZ:  Mark Lutz, appearing on behalf of Sunlust

18   Pictures.

19          THE COURT:  And for the defense?

20          MR. SYFERT:  Your Honor, Graham Syfert here on behalf

21   of Tuan Nguyen, who is also present in Court today.

22          THE COURT:  And on the phone?

23          MR. TORRES:  Attorney Jonathan Torres, Florida counsel

24   for Plaintiff.

25          THE COURT:  And Mr. Lutz, where's your coat and tie
```

1   this morning?  Did you know you were coming to Federal Court?

2              MR. LUTZ:  I did.

3              THE COURT:  Where's your coat and tie?

4              MR. LUTZ:  I apologize, I did not wear one.

5              THE COURT:  Are you an attorney barred in the State of

6   Florida?

7              MR. LUTZ:  I am not, no, I'm a corporate

8   representative.

9              THE COURT:  And who is your counsel?

10             MR. LUTZ:  I'm sorry?

11             THE COURT:  Who is your lawyer?

12             MR. LUTZ:  Our counsel is on the phone here.

13             THE COURT:  Where is your other lawyer; he hasn't been

14  permitted to withdraw?

15             MR. LUTZ:  He wasn't able to appear today.

16             THE COURT:  Mr. Torres, are you in the case or out of

17  the case?

18             MR. TORRES:  No, I'm still in the case, Your Honor.  I

19  presented a motion for telephonic appearance due to an

20  emergency hearing conflict in Orange County and I was allowed

21  to appear by phone and by order that was sent to me yesterday.

22             THE COURT:  Well, I'm a little confused.  There was a

23  lawyer who moved to withdraw, and there was another lawyer who

24  moved to appear, then he moved to withdraw, so who is on first,

25  I guess?

1    MR. TORRES:  Right now, Your Honor, I'm still on the

2    case.  And there is still discussions with my client which I

3    have to confer with them, but right for now, I'm the counsel on

4    the case, Your Honor.

5    THE COURT:  And Mr. Torres, how did you come to be the

6    lawyer in this case?

7    MR. TORRES:  Your Honor, I was contacted by the

8    client, Prenda Law, in order to --

9    THE COURT:  The client and Prenda Law or Prenda Law?

10   MR. TORRES:  Prenda Law, Your Honor,

11   THE COURT:  And what is their relation to you?

12   MR. TORRES:  Just co-counsel arrangement, Your Honor.

13   THE COURT:  And what is that arrangement?

14   MR. TORRES:  For me to appear for any local hearings,

15   Your Honor.

16   THE COURT:  Well, I got a letter from someone from the

17   Prenda Law Group saying they were not representing any party in

18   this case and were not involved in the case and had no

19   authority to speak on anyone's behalf in this case, so is

20   Prenda Law principal counsel in the case or not?

21   MR. TORRES:  No, Your Honor.

22   THE COURT:  So what is their relationship again then

23   to you as counsel in this case?

24   MR. TORRES:  Well, Your Honor, I was --

25   THE COURT:  I'm sorry, I'm sorry, hold on a second.

1           Ms. Vizza, would you please swear this witness, on the

2      phone, yes.

3           Mr. Torres, if you would please raise your right hand.

4           Ms. Vizza.

5           MR. TORRES:  Yes.

6      Thereupon,

7                          JONATHAN TORRES,

8      having first been duly sworn to tell the truth, the whole

9      truth, and nothing but the truth, was examined and testified as

10     follows:

11          MR. TORRES:  Yes.

12          THE COURT:  All right, sir.  You're under oath, you

13     have to give truthful answers to the questions that are asked

14     or face penalties of perjury for false answers.

15          Do you understand that?

16          MR. TORRES:  I understand.

17          THE COURT:  All right.

18          So, starting over now, Prenda is the referring law

19     firm to your firm or the originating firm or principal counsel?

20          MR. TORRES:  My understanding, Your Honor, is that

21     Prenda Law was the counsel for Plaintiffs and is still counsel

22     for Plaintiffs.

23          I was contacted by Brett Gibbs in order to be local

24     counsel to appear on behalf of Prenda Law.

25          THE COURT:  So, Prenda Law purports to be the

1   principal law firm in this case?

2           MR. TORRES:  Correct.

3           THE COURT:  Did Prenda Law file a notice of appearance

4   as principal law firm in this case?

5           MR. TORRES:  My understanding, Your Honor, is that

6   they were, at one point, counsel in the case.  I'm not sure if

7   they actually have a current notice of appearance or not, I'm

8   not sure.

9           THE COURT:  And what is your financial arrangement

10  with Prenda Law?

11          MR. TORRES:  Well, I'm working on a contingency basis,

12  Your Honor.

13          THE COURT:  And what percentage is your cut of the

14  contingency?

15          MR. TORRES:  My understanding is that it's 75 percent,

16  my understanding, of whatever the fees are generated, my

17  understanding, at least.

18          THE COURT:  Yours will be 75 percent and Prenda's will

19  be 25 percent?

20          MR. TORRES:  That is correct, Your Honor.

21          THE COURT:  Who is principally responsible for the

22  case; Prenda or you?

23          MR. TORRES:  Well, my understanding is that I was

24  recently contacted in regards to this case.

25          My understanding is that I was going to be primarily

1    responsible and be the local counsel for this case, but the

2    reason why I presented a motion to withdraw is because just

3    recently I was contacted by defense counsel and was advised of

4    certain issues that were going on in the case.

5              THE COURT:  When were you retained?

6              MR. TORRES:  Well, I was contacted, I believe, Your

7    Honor, it was about 15 days ago.

8              THE COURT:  And who were you contacted by?

9              MR. TORRES:  I was contacted by Mr. Brett Gibbs from

10   Prenda Law.

11             THE COURT:  And who did he tell you was current

12   counsel in the case?

13             MR. TORRES:  Well, he told me that Prenda Law through

14   another attorney locally was the current counsel in the case,

15   and that's why, you know, they were substituting me for counsel

16   in this case, and eight other cases -- actually seven other

17   cases that purportedly Prenda Law was the counsel on.

18             THE COURT:  Give me one second, I need to look up

19   something in the docket.

20             (Brief pause.)

21             And did Mr. Wasinger call you?

22             MR. TORRES:  No, Your Honor, Mr. Wasinger apparently

23   presented a motion to withdraw or substitution of counsel at

24   that point.

25             THE COURT:  And then the Court ordered that he was not

1    granted his leave and directed that he was to appear at this

2    hearing and that his motion for withdrawal would be taken up at

3    this hearing.  And did you see that on the docket when you

4    filed your notice of appearance?

5            MR. TORRES:  No, Your Honor, I did not.

6            THE COURT:  Did you look at the docket when you filed

7    your notice of appearance?

8            MR. TORRES:  I presented the notice of appearance and

9    did not see that Mr. Wasinger was still counsel.

10           THE COURT:  Did you look at the docket is what I asked

11   you?

12           MR. TORRES:  I looked at -- I did look at the docket,

13   per se, I didn't --

14           THE COURT:  The answer is no, you did not read the

15   docket on the case you were appearing in?

16           MR. TORRES:  Correct, Your Honor.

17           THE COURT:  And then shortly after you file your

18   notice of appearance, you moved to withdraw?

19           MR. TORRES:  That is correct, Your Honor.

20           THE COURT:  And why is that?

21           MR. TORRES:  Well, Your Honor, I'll be perfectly

22   honest with you.  Defense counsel contacted me shortly

23   thereafter of being counsel of record, instructed me to call

24   him immediately.

25           And so I -- actually I did, and left him a message,

1  then he returned my phone call.  And there was discussions

2  between Defendant and -- Defendant's counsel and myself in

3  regards to this case.

4      The only thing that -- the first thing that I heard

5  from defense counsel was, you know, rather than see how this

6  case might be settled or anything to that effect, was the fact

7  that there were -- there had been some bar complaints or

8  something to that effect associated with this case or something

9  to that effect, and based on that statement from defense

10  counsel, I decided to present my motion to withdraw and have no

11  further involvement with any of the cases.

12      THE COURT:  Did you have any contact with

13  Mr. Wasinger?

14      MR. TORRES:  No, I did not, Your Honor.

15      THE COURT:  Do you have a written contract with Prenda

16  Law Group?

17      MR. TORRES:  No, I do not, Your Honor.

18      THE COURT:  Have you filed a notice of appearance in

19  all of the other cases that Mr. Wasinger has withdrawn from?

20      MR. TORRES:  Yes, Your Honor.

21      THE COURT:  Have you moved to withdraw in all those

22  cases as well?

23      MR. TORRES:  Yes, I did, Your Honor.

24      THE COURT:  Have those motions been granted?

25      MR. TORRES:  No, Your Honor, based on local rule,

1  after conferring with counsel, but that's something I'll

2  remedy, Your Honor.

3       THE COURT:  I got a letter on the 18th from a

4  Mr. Duffy at Prenda Law, Inc.

5       MR. TORRES:  Okay.

6       THE COURT:  And he advises that he was recently made

7  aware that the Court ordered a principal of Prenda Law to

8  appear in person at the motion to dismiss hearing scheduled for

9  today's date.

10       As the sole principal of Prenda Law, Inc., that would

11  be me.  For the record, I was never served with notice of the

12  Court's Order or otherwise made aware of it until very recently

13  via a phone call from a fellow attorney.

14       As an initial matter, I must respectfully inform the

15  Court I am located in Chicago and my attendance would require

16  air travel and he has had surgery on his eyes and this and

17  that.

18       Then he says, I also respectfully question how my

19  appearance could benefit the Court, particularly since I am not

20  representing anyone, in italics, in this case and have no

21  authority to speak on anyone's behalf.

22       It would certainly -- it would clearly be improper for

23  me to make any statement on a pending matter in a jurisdiction

24  in which I am not licensed and on behalf of a client I do not

25  represent.  In light of the foregoing, I pray that the Court

1    will excuse my attendance at this hearing.

2         Now, is Prenda Law, Inc. different than the entity

3    that you are dealing with?

4         MR. TORRES:  Your Honor, my only understanding is that

5    Prenda Law is the one that has been in contact with me.  That's

6    the only thing I know.

7         To be honest, Your Honor, I responded to an ad for a

8    local appearance, that's all I did, Your Honor.  And other than

9    that, I was brought into these cases, and that's pretty much

10   it.

11        THE COURT:  Who is Prenda Law, Inc.?  Is that the

12   person you're local counsel for?

13        MR. TORRES:  That's technically my understanding of

14   the situation or the arrangement, if you will.

15        THE COURT:  Who is Mr. Gibbs in relation to Mr. Duffy?

16        MR. TORRES:  Well, Mr. Gibbs apparently is a principal

17   at Prenda Law, to my understanding.

18        THE COURT:  Who is Mr. Duffy?

19        MR. TORRES:  Mr. Duffy, I have no contact with

20   Mr. Duffy.  I've never had any contact with Mr. Duffy.

21        THE COURT:  Mr. Lutz, who is the individual who you

22   just spoke to in the Courtroom with you?

23        MR. LUTZ:  Sorry?

24        THE COURT:  Who is that behind you?

25        MR. STEELE:  Your Honor, my name is John Steele.

Page 12

1            THE COURT:  Who are you?

2            MR. STEELE:  I'm an attorney, but not involved in this

3    case.

4            THE COURT:  You're an attorney with what law firm?

5            MR. STEELE:  I'm not an attorney with any law firm

6    right now, but I have worked with Mr. Duffy in the past and I

7    am certainly familiar with this litigation just because I've

8    been involved in many different cases like this in the past.

9            THE COURT:  But not this case?

10           MR. STEELE:  Correct.

11           THE COURT:  So, Mr. Torres, you don't know who your

12   general counsel is other than Mr. Gibbs, and you don't have a

13   written agreement and you just answered a random ad and put

14   your name on a docket in Federal Court?

15           MR. TORRES:  Well, Your Honor, I was going to make a

16   local appearance for someone that, you know, needed a local

17   counsel, and so I did.

18           THE COURT:  Well, you're still a lawyer.

19           MR. TORRES:  I understand.

20           THE COURT:  And Mr. Lutz, did Mr. Wasinger speak with

21   you about his decision not to appear at this hearing?

22           MR. LUTZ:  They did not, no.

23           THE COURT:  Do you know who Mr. Duffy is?

24           MR. LUTZ:  I believe he is a principal of Prenda Law.

25           THE COURT:  And who is Mr. Gibbs?

1          MR. LUTZ:  Mr. Gibbs is also affiliated with Prenda

2  Law, I don't know his official title.

3          THE COURT:  Is he an attorney?

4          MR. LUTZ:  I believe so, in the State of California.

5          THE COURT:  But not in the State of Illinois?

6          MR. LUTZ:  I can't say for sure.

7          THE COURT:  Do you know if he is a partner in the

8  Prenda Law Group?

9          MR. LUTZ:  I do not know his official title, no.

10          THE COURT:  Who is your counsel, who is your lawyer?

11          MR. LUTZ:  Prenda Law is one of them, they represent

12  Sunlust in several cases, not in this case, particularly.

13          THE COURT:  What does that mean; particularly?

14          MR. LUTZ:  Well, it's not in this matter, they

15  represent us in various different cases.

16          THE COURT:  So they were not retained to be your

17  lawyer and they did not refer this matter to Mr. Torres?

18          MR. LUTZ:  I don't know what their affiliation with

19  Mr. Torres is, officially.

20          THE COURT:  Yes, sir.

21          MR. SYFERT:  Your Honor, if I may interject, Mr. Lutz

22  used to work for Mr. Steele down in Miami.  Mr. Lutz was

23  actually a paralegal and debt collector for Prenda Law when it

24  was a multi-state, multi-jurisdictional law firm between here

25  and Illinois.  That's Mr. Lutz.

Page 14

1           So if he's -- he should have better information about

2   the structure of Prenda Law than this and probably has very

3   little structure about the -- or very little information about

4   the actual structure of Sunlust Pictures, Your Honor.

5           THE COURT:  Will you swear this witness, Ms. Vizza,

6   Mr. Lutz.

7   Thereupon,

8                       JOHN LUTZ,

9   having first been duly sworn to tell the truth, the whole

10  truth, and nothing but the truth, was examined and testified as

11  follows:

12          MR. LUTZ:  Yes.

13          THE COURT:  Mr. Lutz, you're under oath, you have to

14  give truthful answers or you face penalties of perjury.

15          Do you understand that?

16          MR. LUTZ:  Yes.

17          THE COURT:  What is your position with Sunlust?

18          MR. LUTZ:  I'm a representative of them.

19          THE COURT:  What does that mean?

20          MR. LUTZ:  Corporate representative.

21          THE COURT:  What does that mean?

22          MR. LUTZ:  They asked me to appear on various matters

23  throughout the country.

24          THE COURT:  Are you an officer of the company?

25          MR. LUTZ:  I'm not, no.

Page 15

```
1              THE COURT:  Are you authorized to bind the company to

2    any legal contracts?

3              MR. LUTZ:  I am not.

4              THE COURT:  Are you salaried?

5              MR. LUTZ:  No, 1099.

6              THE COURT:  So you are a 1099 contracted entity and

7    you just go around and sit in a Court and represent yourself to

8    be the corporate representative of the company?

9              MR. LUTZ:  Yes.

10             THE COURT:  Mr. Torres, did you know this was

11   Mr. Lutz's position, a paid corporate representative?

12             MR. TORRES:  No, Your Honor, I did not.

13             THE COURT:  Who is the president of Sunlust?

14             MR. LUTZ:  I'm unaware.

15             THE COURT:  Who is the vice president?

16             MR. LUTZ:  I'm unaware

17             THE COURT:  Who is the secretary?

18             MR. LUTZ:  I have no idea.

19             THE COURT:  Who owns Sunlust?

20             MR. LUTZ:  I do not know.

21             THE COURT:  Who signs your checks?

22             MR. LUTZ:  I believe somebody in the accounting

23   department.

24             THE COURT:  What is their name?

25             MR. LUTZ:  To be honest with you, I can't read the
```

Page 16

1    signature.

2              THE COURT:  Where is the accounting department

3    located?

4              MR. LUTZ:  I'm sorry?

5              THE COURT:  Where is the accounting department

6    located?

7              MR. LUTZ:  I've received checks from California.

8              THE COURT:  How much are you paid monthly to be the

9    corporate representative?

10             MR. LUTZ:  Again, it depends on my appearances, the

11   number of appearances that I do.

12             THE COURT:  How much were you paid last month?

13             MR. LUTZ:  Approximately $1,000.

14             THE COURT:  And do you have any other job than to

15   around go to Courts representing yourself to be the corporate

16   representative of Sunlust?

17             MR. LUTZ:  For Sunlust, no.

18             THE COURT:  Do you have any other job for the Prenda

19   Law holdings to do anything other than go around the country

20   and represent yourself to be their corporate representative?

21             MR. LUTZ:  I do not work for Prenda Law.

22             THE COURT:  Do you serve in this capacity for any

23   other entity than Sunlust?

24             MR. LUTZ:  Yes.

25             THE COURT:  What companies?

1          MR. LUTZ:  Hard Drive Productions would be one and

2    Guava, LLC.

3          THE COURT:  Do they have similar lawsuits around the

4    country?

5          MR. LUTZ:  They do.

6          THE COURT:  Do you receive a percentage of the

7    recovery of any of these lawsuits?

8          MR. LUTZ:  I do not.

9          THE COURT:  Do you know Mr. Duffy?

10         MR. LUTZ:  Not personally, no.

11         THE COURT:  Have you talked to him before?

12         MR. LUTZ:  I have not, no.

13         THE COURT:  Is he your lawyer?

14         MR. LUTZ:  He is not my attorney

15         THE COURT:  Is he the lawyer for Prenda Law -- or

16   Sunlust?

17         MR. LUTZ:  In various matters, yes.

18         THE COURT:  How many matters do you represent Sunlust

19   in, in the country?

20         MR. LUTZ:  Approximately a dozen.

21         THE COURT:  So half of them are located here in the

22   Middle District and there are others elsewhere?

23         MR. LUTZ:  I believe we have three here in the Middle

24   District.

25         THE COURT:  Mr. Torres, I thought you entered an

1    appearance on five of them here in the Middle District.

2              MR. TORRES:  But not for that particular company.

3              THE COURT:  What was the other company?

4              MR. TORRES:  I believe it's FTG Videos.  I don't have

5    access to my computer at this time, Your Honor, because I'm in

6    the Court in Orange County, but I believe one of them is FTG

7    Videos.

8              THE COURT:  F as in Frank or S as in Sam?

9              MR. TORRES:  F as in Frank, Your Honor.

10             THE COURT:  Mr. Steele, who is the principal of

11   Sunlust?

12             MR. STEELE:  I'm sorry, you're asking me, ma'am?

13             THE COURT:  Yes, sir.

14             MR. STEELE:  I wouldn't know.

15             THE COURT:  You don't know who owns Sunlust?

16             MR. STEELE:  That's correct.

17             THE COURT:  You don't know who the president is?

18             MR. STEELE:  I -- the only person that I know that's

19   involved with Sunlust is Sunny Leone.

20             THE COURT:  Sunny Leone?

21             MR. STEELE:  Is one of the people involved with

22   Sunlust.  That's the only person I've ever --

23             THE COURT:  What is the name?

24             MR. STEELE:  Sunny Leone.

25             THE COURT:  Spell it.

1          MR. STEELE:  S-O-N-N-Y, Leone --

2          THE COURT:  L-E-O-N?

3          MR. STEELE:  I believe there's an E at the end of

4   that, I'm not certain.

5          THE COURT:  Where's is he located.

6          MR. STEELE:  Well, I believe it's a she, and I believe

7   that the last time I heard, she was in India filming a major

8   motion picture with some studio down there, but I don't keep up

9   with that, I don't represent Sunlust or anybody anymore.  I no

10  longer actively practice law.

11         THE COURT:  You're not practicing law?

12         MR. STEELE:  Correct.  I do appear occasionally at

13  hearings on an ad hoc basis, but I do not have any current

14  clients.

15         THE COURT:  You still have a bar license in the State

16  of Florida?

17         MR. STEELE:  No, I'm licensed only in the State of

18  Illinois.

19         I want to make very clear to this Court I'm not

20  purporting in any way to be an attorney licensed in the State

21  of Florida.

22         THE COURT:  Have you ever been licensed in the State

23  of Florida?

24         MR. STEELE:  No.

25         THE COURT:  All right.

Page 20

1          Thank you, sir.

2          So, Mr. Lutz, you don't know who you serve for, you're

3   just sitting here in the Courtroom purporting to be a corporate

4   representative?

5          MR. LUTZ:  I was contacted by Sunny Leone several

6   months ago.

7          THE COURT:  And told what?

8          MR. LUTZ:  She asked me to -- when they needed for me

9   to appear for various reasons, if I would do it on a

10  representative basis.

11         THE COURT:  You can sit away from the table, you're

12  not a corporate representative of anybody if you don't have any

13  information about the corporation.

14         You're not an officer or principal of the corporation.

15  The Court will exclude you as a proper corporate entity for

16  this Defendant.

17         Mr. Torres, your motion to withdraw is granted, you

18  are removed from this case.  Any other lawyer who purports to

19  come in to represent this Defendant would need to file a motion

20  for leave to do so.

21         The case is dismissed for failure to appear at this

22  hearing, for failure to present a lawful agent, for attempted

23  fraud on the Court by offering up a person who has no authority

24  to act on behalf of the corporation as its corporate

25  representative, and the Court will hear, by motion, a motion

```
 1    for sanctions and fees against this Sunlust entity and everyone

 2    affiliated with it, including a motion against Mr. Wasinger for

 3    his purposeful failure to appear at this hearing.

 4            And a motion will also be heard on Mr. Duffy for his

 5    lack of candor in relation to his connection with this matter

 6    based upon the representation of Mr. Torres that he was

 7    contacted by the Prenda Law Group or Prenda Law, Inc. for the

 8    purpose of being retained as local counsel in this case and

 9    that was not presented to the Court in this purported

10    correspondence.  The case is dismissed.

11            I intend to advise the other Judges in the Courthouse

12    of the nature of this matter and may refer this matter to the

13    Florida Bar for further proceedings.

14            Is there anything further from the Plaintiff -- I'm

15    sorry -- from the defense?

16            MR. SYFERT:  No, Your Honor.

17            Well, yes, Your Honor, we have one other case that was

18    transferred to Orlando, same issues exist as in this case.

19            THE COURT:  Who is the Judge in the case.

20            MR. SYFERT:  The First Time -- it's First Time Videos

21    versus Oppold, O-P-P-O-L-D.

22            It was originally filed in Tampa then transferred to

23    Orlando.  Spaulding I believe is the Judge, Your Honor.

24            THE COURT:  Judge Spaulding is a Magistrate Judge.  Do

25    you know the case number?
```

1          MR. SYFERT:  I don't have that with me.  I have the

2   old case number from the --

3          THE COURT:  Tampa case?

4          MR. SYFERT:  I have -- yeah, the Tampa case number was

5   8:12-CV-1685-MSS-MAP.

6          THE COURT:  All right.  I'll take a look at it.

7          Mr. Torres, a word to the wise, sir.  When you

8   represent an entity, no matter how limited your role is, you're

9   placing your bar number at issue and you're placing your name

10  and your goodwill at issue before a Court.

11         And saying you're local counsel and you only intended

12  to file on their behalf and pick up a small fee for that

13  limited role does not absolve you from responsibility for

14  making sure that whatever you sign on to, whatever you enter an

15  appearance on behalf of is a legitimate entity with legitimate

16  concerns, because you run a strong risk that you could be

17  sanctioned or lose your bar license behind conduct of the type

18  that you're witnessing here.

19         I hope that this is a lesson to you about how to

20  proceed going forward with characters such as the ones that are

21  presented here.

22         MR. TORRES:  Yes, Your Honor, I totally understand and

23  thank you.

24         THE COURT:  Thank you.

25         MR. TORRES:  Am I excused, Your Honor?

1          THE COURT:  You are excused.

2          This matter is dismissed.

3          MR. SYFERT:  Thank you, Your Honor.

4          THE COURT:  Thank you.

5          (Thereupon, the proceedings concluded.)

6                          * * * * * * * *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 24

1                              CERTIFICATE

2

3    STATE OF FLORIDA        )
                                     SS
4    COUNTY OF HILLSBOROUGH    )

5

6            I, CLAUDIA SPANGLER-FRY, Official Court Reporter for

7    the United States District Court, Middle District, Tampa,

8    Division,

9            DO HEREBY CERTIFY, that I was authorized to and did,

10   through use of Computer Aided Transcription, report in

11   shorthand the proceedings and evidence in the above-styled

12   cause, as stated in the caption hereto, and that the foregoing

13   pages numbered 1 to 24 inclusive, constitute a true and correct

14   transcription of my shorthand report of said proceedings and

15   evidence.

16             IN WITNESS WHEREOF, I have hereunto set my hand

17   in the City of Tampa, County of Hillsborough, State of Florida,

18   this 29th day of November, 2012.

19

20           CLAUDIA SPANGLER-FRY, Official Court Reporter

21

22

23                 BY: /s/ CLAUDIA SPANGLER-FRY

24

25



Morgan Pietz <morganpietz@gmail.com>

## Activity in Case 2:12-cv-08333-DMG-PJW Ingenuity13 LLC v. John Doe Notice of Related Case(s)

**Morgan Pietz** <morganpietz@gmail.com>
To: Brett Gibbs <blgibbs@wefightpiracy.com>

Thu, Dec 13, 2012 at 1:12 PM

Brett,

I called Prenda's main number earlier today and asked for you. After being put on hold, I was transferred to your extension. The line rang a few times, then it sounded like the line was picked up, but then the line immediately went dead, so I did not have an opportunity to leave you a voicemail.

Please give me a call -- I would like to follow up with you regarding not only the issues below, but also some administrative matters relating to your cases in the Northern District of California.

Best regards,
Morgan

On Fri, Dec 7, 2012 at 5:30 PM, Morgan Pietz <morganpietz@gmail.com> wrote:
> Brett,
>
> For the record, I didnt yell or even raise my voice much less swear at you. I assume you hung up because you are trying to dodge these troubling question. Please quit with the theatrics.
>
> Sent from my iPhone
>
> On Dec 7, 2012, at 5:17 PM, Brett Gibbs <blgibbs@wefightpiracy.com> wrote:
>
>> Mr. Morgan:
>>
>> Mr. Morgan, I did not hang up on you. I take offense to your purposefully twisted versions of things. At the end of our conversation, I said that "it was nice speaking with, I had other things to do and good bye" [paraphrasing]. That is not "hanging up" on someone, that is called ending a phone conversation (with respect, I might add). Whether you heard my saying this over your yelling at me is not my fault. You were swearing at me, and being extremely hostile to me on phone, and I frankly had other things of import to accomplish on my schedule -- the conversation was ten minutes long and the abuse I was subjected to was uncalled for. A piece of advice: this is not how you "meet and confer" on an issue. It simply was not professional.
>>
>> The issue is entirely irrelevant to the instant matter. I cannot stress this any further -- it is irrelevant. You are basing relevancy on a letter filed in Minnesota that was ignored by that court. Even that court in Minnesota recognized the letter for what it truly was -- a conspiracy theory letter with no factual basis. I don't know how else to explain this to you. As you understand, it is hard (if not impossible) to prove a negative -- especially to an individual like yourself that has no trust in things aside from his version of things. Your use of the word "assume" is very apt in this situation.

As I told you over the phone, when you asked "Is there another Alan Cooper?", I said, "I am sure there are hundreds of Alan Coopers in this world."  If your question had been framed more pointedly, and not so vague, maybe I could have provided you with a specific answer.

I don't wish to discuss this matter further with you because of the verbal abuse I experienced in our first phone call.  You know, as well as I, that there is a certain courtesy-code displayed between even opposing attorneys -- your yelling and use of bad language directed towards me violates those rules.  I would remind you of the following:

"As officers of the court with responsibilities to the
administration of justice, attorneys have an obligation to be
professional with clients, other parties and counsel, the
courts and the public. This obligation includes civility,
professional integrity, personal dignity, candor, diligence,
respect, courtesy, and cooperation, all of which are essential
to the fair administration of justice and conflict resolution."
[California Attorney Guidelines of Civility and Professionalism]

Please be ever mindful of this if we speak in the future.

Regards,

Brett Gibbs

On Fri, Dec 7, 2012 at 11:40 AM, Morgan E. Pietz <mpietz@pietzlawfirm.com> wrote:

Brett,

This is to confirm a few things, in writing, about our phone call of earlier today.

Prior to hanging up on me, you confirmed that you would not be answering either of my questions below about (1) your client contact at Ingenuity 13 (not AF holdings, which I clarified today) or (2) a copy of Alan' Coopers verification in the Ingenuity 13 case in E.D. Cal., which you purported to keep a copy of, under penalty of perjury.  You stated that you viewed these issues as irrelevant to the instant case, and would not answer them absent a more formal demand.  I explained that I disagreed, because as far as I am concerned, the Alan Cooper issue goes straight to the heart of whether your client has proper standing, among other, more troubling issues.

Also, to repeat my additional request: if any facts in the Alan Cooper letter filed in Minnesota are incorrect, then please let me know which fact and why it is incorrect.  However, since you have so far refused to provide any specifics, I can only continue to assume that everything in that letter is correct.

I also note that you again refused to say whether there is another Alan Cooper (other than the gentleman in Minnesota who filed the letter through counsel) who is/was the principal of AF Holdings of Ingenuity 13.

Please contact me should you change your mind and decide that you do wish to discuss this matter further.

Best regards,
Morgan

On Fri, Dec 7, 2012 at 11:13 AM, Morgan E. Pietz <mpietz@pietzlawfirm.com> wrote:
Re-forward.


---------- Forwarded message ----------
From: **Morgan E. Pietz** <mpietz@pietzlawfirm.com>
Date: Mon, Dec 3, 2012 at 7:23 PM
Subject: Re: Activity in Case 2:12-cv-08333-DMG-PJW Ingenuity13 LLC v. John Doe Notice of
Related Case(s)
To: Brett Gibbs <blgibbs@wefightpiracy.com>


Brett,

If I am supposedly twisting your words (although you do not say how, or clarify whether you are now
changing your mind), how about a couple of straight answers then, so nothing gets lost in
translation:

(1) Will you tell me the name of your supposed client contact at AF Holdings with whom you
supposedly communicated with last week?  I do not want any details of the conversation, just a
name.

(2) Will you produce the original signature to the verification page, identified below, that supposedly
contains "Alan Cooper's" handwritten signature?

And if the answer to these questions is still no, which is what you said earlier today, please explain
why.

Best regards,
Morgan


On Mon, Dec 3, 2012 at 7:09 PM, Brett Gibbs <blgibbs@wefightpiracy.com> wrote:
Mr. Pietz:

Assume whatever you would like to assume -- that seems to be what you have done throughout
my cases with you.

As for the former, you have grossly misstated the contents of the "very brief conversation from
just prior to the telephonic conference."  I think this twisting of my words is intentional -- and I do
not like playing childish and manipulative games.  So, I will not be drawn into this baseless banter,
wasting everyone's time and money.

If want to have an honest adult conversation, I will participate.  If you want to have a meet and
confer on these issues, I will be available to do that next week.  Let me know when you are
available.

Regards,

Brett Gibbs

On Mon, Dec 3, 2012 at 6:17 PM, Morgan E. Pietz <mpietz@pietzlawfirm.com> wrote:
> Brett,
>
> I wanted to follow up on our very brief conversation from just prior to the telephonic conference
> with Judge Walsh today regarding the two issues raised in my email below.
>
> This email is to confirm that before Magistrate Judge Walsh joined us on the line, you stated
> that you would not be providing me with either the name of your client contact, or a copy of the
> original signature version of Alan Cooper's verification in the E.D. Call Petition matter, which
> you stated, under penalty of perjury, that you have a copy of in your possession.
>
> In an effort to begin a meet and confer dialogue on the matter, can you please elaborate on the
> reason(s) that you are refusing to produce either of these things?
>
> Frankly, I think your refusal to answer the simple question of whether there is another Alan
> Cooper (i.e., not Mr. Steele's former caretaker in Minnesota) who is the principal of AF Holdings
> and Ingenuity 13 speaks volumes.  Until you provide some kind of answer that makes sense,
> under penalty of perjury, I am going to assume the worst case scenario here and litigate
> accordingly.
>
> If you would like to discuss any of this, please feel free to give me a call.
>
> Best regards,
> Morgan
>
>
>
> On Mon, Dec 3, 2012 at 12:58 PM, Morgan E. Pietz <mpietz@pietzlawfirm.com> wrote:
>> Brett,
>>
>> Last week you told me that you lacked authority to grant me an extension request and would
>> have to "check with [your] client" on whether you could grant a modest extension.  Then, a
>> few days later, you purported that you had answer on this issue (although you never did
>> bother to tell me what your client's response was).
>>
>> In light of all of the serious questions raised in the Notice of Related Cases (filing receipt
>> below) regarding who really owns AF Holdings and Ingenuity 13, I'd like you please clarify
>> something for me: when you said you had to talk to your client last week, with whom did you
>> speak?
>>
>> Also, with reference to Exhibit E (a copy of your verified petition in an ED Cal Ingenuty 13
>> case) to Appendix 1 (of the Notice of Related Cases), please consider this my first, informal
>> request for a copy of the original signature of Alan Cooper.  The verification page, which
>> recites that it was "Notarized" on the heading, states under Alan Cooper's "/s/" signature that:
>>
>>     "I, Brett L. Gibbs, Esq., hereby confirm per Eastern District of California Local Rule
>>     131(f) that counsel for Plaintiff has a signed original notarized version of the above
>>     Verified Petition."

Please produce a copy of that original signature for my inspection.

Feel free to give me a call if you would like to discuss any of this prior to our 3:00 call with Magistrate Walsh today.

Best regards,
Morgan


---------- Forwarded message ----------
From: <cacd_ecfmail@cacd.uscourts.gov>
Date: Mon, Dec 3, 2012 at 12:41 PM
Subject: Activity in Case 2:12-cv-08333-DMG-PJW Ingenuity13 LLC v. John Doe Notice of Related Case(s)
To: ecfnef@cacd.uscourts.gov


**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA

## Notice of Electronic Filing

The following transaction was entered by Pietz, Morgan on 12/3/2012 at 12:41 PM PST and filed on 12/3/2012

| | |
|---|---|
| **Case Name:** | Ingenuity13 LLC v. John Doe |
| **Case Number:** | 2:12-cv-08333-DMG-PJW |
| **Filer:** | John Doe |
| **Document Number:** | 15 |

**Docket Text:**
**NOTICE of Related Case(s) filed by Putative John Doe John Doe. Related Case(s): 2:12-cv-05709-ODW-JC; 2:12-cv-06635-GHK-RZ; 2:12-cv-06660-GAF-AGR; 2:12-cv-07385-DSF-FFM; 2:12-cv-07386-DMG-JEM; 2:12-cv-08322-DMG-PJW; 2:12-cv-08333-DMG-PJW (Attachments: # (1) Appendix 1 - Letter Filed by Counsel for Alan Cooper in District of Minnesota, # (2) Appendix 2 - Transcript of Prenda Hearing in Middle District of Florida, # (3) Appendix 3 - Table of Related Ingenuity 13 and AF Holdings Cases in Central District of California)(Pietz, Morgan)**

**2:12-cv-08333-DMG-PJW Notice has been electronically mailed to:**

Brett Langdon Gibbs &nbsp &nbsp blgibbs@wefightpiracy.com, docket@wefightpiracy.com

Morgan E Pietz &nbsp &nbsp mpietz@pietzlawfirm.com, lrudolph@pietzlawfirm.com

**2:12-cv-08333-DMG-PJW Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**_Notice of Related Cases v3.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/3/2012] [FileNumber=14739678-0
] [8fa7b4078f2edcb17f48906046f07118f65a17d9fd4cc4bb72a832a819fbb9d764c
53cad2cb7709c7326429417cf1da8198fa258763750d699bdcfb8302432f5]]
**Document description:**Appendix 1 - Letter Filed by Counsel for Alan Cooper in District of Minnesota
**Original filename:**1 - Alan Cooper - ECF Letter.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/3/2012] [FileNumber=14739678-1
] [b67f59fd3ea3af034988085bb0050c0b7bec0b51f4a2a1b9e1a86d884bee70902f8
b185448643eaaf0c168ea094d9bb795cfe18ea0a76694db229c8d4f0ed93b]]
**Document description:**Appendix 2 - Transcript of Prenda Hearing in Middle District of Florida
**Original filename:**2 - Nguyen Hearing Transcript - Tampa.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/3/2012] [FileNumber=14739678-2
] [800d30a30660cee9e1e1cd9e2085b2203c5f1560dc35331306948d42d5db2bacbb1
4c9c0de2ba4111a44f943ff62244c47022c110fb78c02cb7bc79c5b6db298]]
**Document description:**Appendix 3 - Table of Related Ingenuity 13 and AF Holdings Cases in Central District of California
**Original filename:**3 - Table of Cases.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/3/2012] [FileNumber=14739678-3
] [5ae2ecc869dce997f693775d8ff426a8a3c48b190e25e753128678117c874da161b
d2e4141ae7449e578ee22e9cd67e8a02439f2880ed9596a082b3653152487]]

--

Morgan E. Pietz
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Ph: (310) 424-5557
Fx: (310) 546-5301
www.pietzlawfirm.com

--

Morgan E. Pietz
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Ph: (310) 424-5557
Fx: (310) 546-5301
www.pietzlawfirm.com

--

Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

NOTICE: THIS EMAIL IS INTENDED TO BE PART OF A SETTLEMENT NEGOTIATION AND IS
NOT ADMISSIBLE UNDER FRE RULE 408.

NOTICE:
This communication is covered by the Electronic Communications Privacy Act, found at 18 U.S.C. 2510 et. seq.
and is intended to remain confidential and is subject to applicable attorney/client and/or work product
privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in
error, please immediately alert the sender by reply e-mail and then delete this message and all attachments. Do
not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient,
do not disclose the contents or take any action in reliance upon the information contained in this
communication or any attachments.

Circular 230 Disclosure: Pursuant to recently-enacted U.S. Treasury Department regulations, we are now
required to advise you that, unless otherwise expressly indicated, any federal tax advice contained in this
communication, including attachments and enclosures, is not intended or written to be used, and may not be
used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting,
marketing or recommending to another party any tax-related matters addressed herein.

--

Morgan E. Pietz
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com

12/13/12 1:59 PM

Ph: (310) 424-5557
Fx: (310) 546-5301
www.pietzlawfirm.com


--

Morgan E. Pietz
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Ph: (310) 424-5557
Fx: (310) 546-5301
www.pietzlawfirm.com


--

Morgan E. Pietz
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Ph: (310) 424-5557
Fx: (310) 546-5301
www.pietzlawfirm.com


--
Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

NOTICE: THIS EMAIL IS INTENDED TO BE PART OF A SETTLEMENT NEGOTIATION AND IS NOT
ADMISSIBLE UNDER FRE RULE 408.

NOTICE:
This communication is covered by the Electronic Communications Privacy Act, found at 18 U.S.C. 2510 et. seq. and is
intended to remain confidential and is subject to applicable attorney/client and/or work product privileges.  If you are
not the intended recipient of this message, or if this message has been addressed to you in error, please immediately
alert the sender by reply e-mail and then delete this message and all attachments.  Do not deliver, distribute or copy this
message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any
action in reliance upon the information contained in this communication or any attachments.

Circular 230 Disclosure: Pursuant to recently-enacted U.S. Treasury Department regulations, we are now required to

12/13/12 1:59 PM

advise you that, unless otherwise expressly indicated, any federal tax advice contained in this communication, including attachments and enclosures, is not intended or written to be used, and may not be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

--

# EXHIBIT B

Case 2:12-cv-08333-ODW-JC Document 173-7 Filed 07/02/13 Page 42 of 121 Page ID #:3203

## COPYRIGHT ASSIGNMENT AGREEMENT

This Copyright Assignment Agreement is dated effective as of December 20, 2011, by and among Heartbreaker Digital LLC ("Assignor") and AF Holdings, LLC, a Nevis limited liability company ("Assignee").

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.     Assignment. Assignor hereby irrevocably assigns, conveys and otherwise transfers to Assignee, and its respective successors, licensees, and assigns, all rights, title and interest worldwide in and to that certain work titled "Popular Demand" and associated with copyright registration number PA0001754383 (collectively the "Work") and all proprietary rights therein, including, without limitation, all copyrights, trademarks, design patents, trade secret rights, moral rights, and all contract and licensing rights, and all claims and causes of action of respect to any of the foregoing, whether now known or hereafter to become known. In the event Assignor has any right in the Work which cannot be assigned, Assignor agrees to waive enforcement worldwide of such right against Assignee, its distributors, and customers or, if necessary, exclusively license such right worldwide to Assignee. These rights may be assigned by Assignee.

2.     Representations and Warranties. Assignor represents and warrants that: (a) the Work was created solely by Assignor, Assignor's full-time employees during the course of their employment, or independent contractors who assigned all right, title and interest in their work to Assignor; (b) Assignor is the owner of all rights, title and interest in the tangible forms of the Work and all intellectual property rights protecting them; (c) the Work and the intellectual property rights protecting them are free and clear of all encumbrances, including, without limitation, security interests, licenses, liens, charges or other restrictions; (d) the use, reproduction, distribution, or modification of the Work does not and will not violate the rights of any third parties in the Work including, but not limited to, trade secrets, publicity, privacy, copyrights, and patents; (e) the Work is not in the public domain; and (f) Assignor has full power and authority to make and enter into this Agreement. Assignor agrees to defend, indemnify, and hold harmless Assignee, its officers, directors and employees for any claims, suits or proceedings alleging breach of these warranties.

3.     Entire Agreement. This Agreement constitutes the entire agreement between Assignor and Assignee with respect to the subject matter herein and supersedes any prior or contemporaneous agreements, written or oral.

4.     Modifications. This Agreement may be modified only by a written agreement signed by both Assignor and Assignee.

5.     Governing Law. This Agreement shall be governed by and enforced in accordance with the State of California and the Ninth Circuit, without giving effect to any conflicts of laws principles.

6.      Severability. If one or more provisions of this Agreement are held to be illegal or unenforceable under applicable law, such illegal or unenforceable portion(s) shall be limited or excluded from this Agreement to the minimum extent required so that this Agreement shall otherwise remain in full force and effect and enforceable in accordance with its terms.

7.      Assignment. Assignee may assign or otherwise transfer this Agreement without consent or notice.

8.      Perfection. Assignors agree at the request and expense of Assignee to execute any documents or perform any actions which Assignee may request to perfect this assignment or otherwise implement this Agreement. Assignor agrees that this assignment may be submitted by Assignee to the United States Copyright Office to reflect the assignment.

9.      Confidentiality. Neither party shall reveal the terms of this Agreement to any third party unless ordered to do so by a court of competent jurisdiction.

10.     Jurisdiction. Each party agrees to submit to the exclusive personal jurisdiction and venue of the courts of the Island of Nevis with respect to any disputes arising hereunder.

Agreed and Accepted as of the first date written above.

Raymond Rogers, on behalf of:

**Assignor**
Heartbreaker Digital LLC

Alan Cooper, on behalf of:

**Assignee**
AF Holdings, LLC

Morgan E. Pietz (SBN 260629)
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone:   (310) 424-5557
Facsimile :   (310) 546-5301

Attorney for Putative John Doe in 2:12-cv-08333-DMG-PJW

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGENUITY 13, LLC, a Limited Liability Company Organized Under the Laws of the Federation of Saint Kitts and Nevis,<br><br>            Plaintiff,<br><br>    v.<br><br>JOHN DOE,<br><br>            Defendant. | Case Number(s): 2:12-cv-08333-DMG-PJW<br><br>Assigned to: Judge Dolly M. Gee<br>Referred to: Magistrate Judge Patrick J. Walsh<br><br>**[PROPOSED] ORDER GRANTING PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY AND FOR A FURTHER STAY OF THE SUBPOENA RETURN DATE** |

**[PROPOSED] ORDER GRANTING PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY AND FOR A FURTHER STAY OF THE SUBPOENA RETURN DATE**

The Court, having duly considered Putative John Doe's *Ex Parte* Application for Leave to Take Early Discovery and For a Further Stay of the Subpoena Return Date, including the supporting declaration and appendices thereto, rules as follows:

IT IS ORDERED THAT:

[ ]     1.     John Doe's ex parte application is GRANTED in full. John Doe may, within fifteen days from the date hereof, propound the limited written discovery set forth in the instant *ex parte* application. The subpoena return date for the subpoena issued by plaintiff to Comcast, seeking John Doe's identity, is stayed pending further order of this Court.

[ ]     2.     John Doe's ex parte application is GRANTED in part and DENIED in part. The request to propound early discovery is denied. However, the request for a stay of the subpoena return date for an additional 30-days is granted. The subpoena return date for the subpoena issued by plaintiff to Comcast, seeking John Doe's identity, is stayed until Monday January 28, 2012, in order to allow the putative John Doe to file a motion to quash. If the putative John Doe does file a motion to quash on or before January 28, 2012, the subpoena return date is hereby stayed until this Court decides that motion.

IT IS FURTHER ORDERED that plaintiff shall, by the next business day after the date of the entry of this order, give notice to Comcast, by appropriate means, and the notice shall include a copy of this order. SO ORDERED.

DATED: _____     _____
                                     Honorable Patrick J. Walsh
                                     United States Magistrate Judge

-1-

**[PROPOSED] ORDER GRANTING PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY AND FOR A FURTHER STAY OF THE SUBPOENA RETURN DATE**

# CERTIFICATE OF SERVICE

  I hereby certify that on this day, the above document was submitted to the CM/ECF system, which sent notification of such filing(s) to the plaintiff, which is registered for electronic service.

Respectfully submitted: December 18, 2012  THE PIETZ LAW FIRM

                      */s/ Morgan E. Pietz*

                      Morgan E. Pietz

                      THE PIETZ LAW FIRM

                      Attorney for Putative John Doe(s)

                      Appearing on Caption

**[PROPOSED] ORDER GRANTING PUTATIVE JOHN DOE'S *EX PARTE* APPLICATION FOR LEAVE TO TAKE EARLY DISCOVERY AND FOR A FURTHER STAY OF THE SUBPOENA RETURN DATE**